UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHUAIB WESLEY, | No. 9:06-cv-01118-JKS |
| Petitioner, | MEMORANDUM DECISION |
| vs. | |
| ROBERT E. ERCOLE, Superintendent, Green Haven Correctional Facility, | |
| Respondent. | |

Petitioner Shuaib Wesley, a state prisoner appearing though counsel, filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Wesley is currently in the custody of the New York Department of Corrections and Rehabilitation, incarcerated at the Green Haven Correctional Facility.  Respondent has filed an answer to which Wesley has replied.[1]

## I.  BACKGROUND/PRIOR PROCEEDINGS

The facts of the crime, as determined from the testimony of witnesses for the State,[2] are as follows.  In the early-morning hours of May 27, 2001, Shyrone Reape went with his cousin, Shanida Robinson, and two of Robinson's friends, Nicole Kilibrew and Yvonne Powell, to a party at a club at 109 Court Street (the "109 Club").  Although the club was dimly lit, strobe lights made it possible to see faces.  After having drinks at the bar, the three women were dancing together on the dance floor near the disc jockey ("DJ") booth when Robinson's ex-girlfriend, Jazmin Leon, accused Killibrew of pushing her.  The two began to argue.

---

[1] Wesley filed his petition *pro se*.  Subsequent to filing the petition, Wesley retained counsel who filed the traverse on Wesley's behalf.

[2] As set forth in Respondent's Memorandum of Law.  Wesley agrees that the Respondent accurately summarized the testimony.

Reape walked over to the group and asked what was going on.  Another man suddenly punched Reape in the face and Reape punched back.  Other people, including Robinson, joined the fracas.[3]

Suddenly, shots rang out, and the melee on the dance floor ceased.  Robinson saw blood on the floor, and saw a guy pick up a gun from the floor; she then heard a third gunshot.  The gunshots sounded like they were coming from near the DJ booth.

Jamar Johnson, another guest at the party, was at the DJ booth when he saw that what had started as a fight between some women was escalating into an all-out brawl.  Johnson started to walk towards the back door to leave the party when he heard a gunshot; he began to run, then felt a searing pain in his leg as two or three more gunshots were fired.[4]  He yelled "I'm hit!" and hopped towards the door as two more gunshots rang out.

Reape felt a bullet hit him in the lower back.  He turned around, and saw a dark-skinned male, who was not part of the fight, firing at him; he heard two more shots, and felt a bullet hit his inner elbow and one graze his face.  Reape fell to the ground, and he heard a fourth gunshot, which sounded like it came from a different gun than the first three shots.

Four of Wesley's friends who were with Wesley at the club testified as eyewitnesses at trial:  Nicole Armstrong, Khadijah Anderson, Jamiallah Myers, and Curtis Livingston, known as "Bugsy" and a lieutenant in the Crips gang, had all been with Wesley at the club; Myers' brother, Salih "Capone" Shabazz, was also with the group, but did not testify.  Myers had known Wesley, whose street name was "True Blue," for years; he was a good friend of hers and had babysat her children.  Armstrong was also good friends with Wesley.

According to Armstrong, the dance-floor brawl by the DJ booth began when a girl came up to Jazmin and bumped her really hard.  Jazmin punched the girl, and two of Jazmin's male friends picked Jazmin up and put her by the DJ booth while the brawl escalated a few feet in front of them.  Armstrong saw Wesley, who was dancing with Anderson just on the other side of

---

[3] According to the victim, he did not enter the fray until he saw another man place his hands around Robinson's throat.

[4] The witnesses each described hearing a different number of shots.

the melee, pull out a gun, then drop it, pick it up from the floor, and point it at some guy she did not know.  Armstrong dropped to the floor with her head down, and heard two or more shots go off.

Myers was dancing near Wesley and Anderson when she saw people fighting on the dance floor.  Myers saw petitioner draw a gun from his back waistband and point it.  She immediately heard five or six shots, and saw a boy dressed in red fall down.  As Myers started to run, she saw Anderson grab the gun from petitioner and heard it fire again, hitting some other guy in the leg and splattering Anderson with blood.  Myers saw Wesley put the gun back at his waist.

Anderson also recalled seeing first girls, then a huddle of people fighting.  She was dancing with Wesley when she heard shots fired from across the huddle, then she saw Wesley point a gun and fire twice; Anderson did not know where the gun came from.  She pushed down Wesley's hand, and he quit firing and fell to the floor.  Anderson picked him up and they ran out of the club.

Later, Myers, Armstrong, Anderson, Capone and Wesley, among others, all met up at Bugsy's house.  There, either Wesley, Capone, or Bugsy told Myers that the gun Wesley used had been in Capone's coat when Myers carried the coat into the club.  Wesley changed out of the bloody clothes he had been wearing, and Bugsy said he would dispose of the gun and the bloody clothes.  Bugsy congratulated Wesley and gave him "mad props" on the shooting, because it would improve his status with the Crips and earn him "OG status," meaning the high rank of "Original Gangster."

Curtis Livingston, a.k.a. "Bugsy," testified under subpoena that he was not at the 109 Club; that Wesley, Myers, and a few others went to his house for 5-10 minutes after the 109 Club shooting and Wesley told him "he shot a Blood" to "get his OG status"; but denied that Wesley had given him the gun or any bloody clothes to dispose of.

Myers, Armstrong, Wesley, and another male took a cab to the Ramada Inn, where Myers had rented a room, and stayed there the rest of the night.  In the cab, Wesley told the group that he had "had to pop off," meaning, shoot.

Wesley was convicted after a jury trial in the Broome County Court of Assault in the First Degree (New York Penal Law § 120.10(1)), Criminal Possession of a Weapon in the Second Degree (N.Y. Pen. Law § 265.03 (2)), and Criminal Possession of a Weapon in the Third Degree (N.Y. Pen. Law § 265.02 (1)).  The Broome County Court sentenced Wesley, as a second violent felony offender, to concurrent, determinate terms of twenty-two years' imprisonment for the first degree assault conviction, and five years for each of the other convictions, to be followed by five years' post-release supervision.  However, due to a sentencing error, Wesley was resentenced to a determinate term of seven years' imprisonment for the Criminal Possession of a Weapon in the Second Degree conviction, and to an indeterminate term of two-to-four years' imprisonment for the Criminal Possession of a Weapon in the Third Degree conviction.

Wesley timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction and the New York Court of Appeals denied leave to appeal on October 25, 2005.[5]  Wesley timely filed his petition for relief in this Court on September 18, 2006.  Subsequent to filing his petition in this Court, Wesley sought and obtained a stay while he returned to the state courts to exhaust his unexhausted grounds.  Wesley filed a motion for a writ of error *coram nobis* in the Appellate Division, which was summarily denied without opinion or citation to authority and leave to appeal was denied by the New York Court of Appeals.[6]

## II.  ISSUES RAISED/DEFENSES

In his Petition Wesley raises four grounds:  (1) ineffective assistance of both trial and appellate counsel; (2) insufficiency of the evidence/the verdict was against the weight of the evidence; (3) conviction was obtained by the use of a coerced confession; and (4) prosecutorial misconduct.  Respondent contends that:  (1) to the extent that the first ground alleges ineffective assistance of trial counsel it is unexhausted and procedurally barred; (2) Wesley's claim in the second ground that the verdict was against the weight of the evidence is unexhausted; (3) Wesley

---

[5] *People v. Wesley*, 797 N.Y.S.2d 632 (N.Y. App. Div.), *lv. denied*, 840 N.E.2d 146 (N.Y. 2005) (Table).

[6] *People v. Wesley*, 872 N.E.2d 1206 (N.Y. 2007) (Table).

has procedurally defaulted on his third ground; and (4) his fourth ground is unexhausted and procedurally barred.  Respondent raises no other affirmative defense.[7]

### III.  STANDARD OF REVIEW

Because Wesley filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[11]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of

---

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

[8] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404–405 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70–73 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[11] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[13]

In applying this standard, this Court reviews the last reasoned decision by the state court.[14]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15]

To the extent that Wesley raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[16]  A federal court must accept that state courts correctly applied state laws.[17]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[18]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[19]

---

[13] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[17] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[18] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[19] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

IV.  DISCUSSION

Ground 1: Ineffective Assistance of Counsel.

Ground 4:  Prosecutorial Misconduct.

In the proceedings before this Court, Wesley contends that appellate counsel was ineffective in failing to raise on direct appeal the alleged prosecutorial misconduct issue and that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct.[20]

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Wesley must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[21]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[22]  Wesley must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[23]  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[24] The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[25]

Wesley contends:

> More specifically, that appellate counsel failed to raise on appeal the failure of trial counsel to have objected to a statement made by the prosecutor on summation that constituted clear prosecutorial conduct, was clearly and plainly inconsistent with the testimony adduced at trial and was of a material and relevant nature.  Additionally, that appellate counsel failed to argue on appeal that such

---

[20] In his petition Wesley asserts that both trial and appellate counsel were ineffective.  In his traverse, however, Wesley specifically abandons any direct claim that trial counsel was ineffective.

[21] 466 U.S. 668, 687 (1984).

[22] *Id*.

[23] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[24] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[25] *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

statement constituted prosecutorial misconduct that went to the heart of the
Petitioner's conviction.[26]

Consequently, because it is inextricably intertwined with the ineffective assistance of appellate
counsel claim, it is necessary for this Court to examine the merits of Wesley's fourth ground:
prosecutorial misconduct.[27]

Wesley presented his ineffective assistance of appellate counsel to the state courts in his
motion for a writ of error *coram nobis*, which motion was denied without opinion or citation to
authority.  Where, as here, there is no reasoned decision of the state court addressing the ground
or grounds raised on the merits and no independent state grounds exist for not addressing those
grounds, this Court must decide the issue *de novo* on the record before it.[28]  In making this
review, because it is not clear from the record that the state court did not decide the case based
upon the merits, the Court assumes that the state court decided the claim on the merits and the
decision rested on federal grounds.[29]  This Court gives the assumed decision of the state court the
same AEDPA deference that it would give a reasoned decision of the state court.[30]

"At issue was the prosecutor's statement to the jury that the witness 'Khadijah,' testified
that Petitioner pulled out a gun and fired it two times at a guy with her right there."[31]  Wesley
argues that this misstates the actual testimony of the witness in that she could not really tell if he

---

[26] Traverse, Docket No. 31, p. 33.

[27] The Court agrees with Respondent that Wesley's fourth ground, which was not raised in
Wesley's direct appeal, is unexhausted and procedurally defaulted.  *See Aparicio v. Artuz*, 269 F.3d 78,
90 (2d Cir. 2001).  The failure to exhaust and procedural default notwithstanding, in determining whether
appellate counsel was ineffective in failing to raise the issue, this Court must nevertheless determine
whether that question is meritorious and whether there is a reasonable probability that the verdict would
have been different absent the constitutional error.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375
(1986); *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006).

[28] *See Dolphy v. Mantello*, 552 F.3d 236, 238–40 (2d Cir. 2009), *citing Spears v. Greiner*, 459
F.3d 200, 203 (2d Cir. 2006); *cf. Wiggins v. Smith*, 539 U.S. 510, 530–31 (2003) (applying a *de novo*
standard to a federal claim not reached by the state court).

[29] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991);
*see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris–Coleman* interplay); *see
also Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 809–10 (2d Cir. 2000) (same).

[30] *Jimenez*, 458 F.3d at 145–46.

[31] Traverse, Docket No. 31, p. 33.

fired at or hit anyone.  The witness did not specifically testify that it was fired "at a guy."  The witness did, however, testify that (1) shots were fired from a particular spot on the dance floor that she identified on a diagram, and (2) Wesley fired two shots in the direction of the spot from which the previous shots had been fired.[32]  Here, it cannot be said that it was illogical to infer from the testimony of the witness that Wesley fired two shots at the person who had previously fired shots, *i.e.*, "at a guy."

> In instructing the jury, the trial court included the following:
>
> > The attorneys have, in their summations, recalled the evidence for you. They have suggested to you certain inferences and conclusions that you should draw from the evidence.  I remind you that what the lawyers say to you in their final arguments is not evidence and you are free to accept or to reject their comments as you deem appropriate.  For once again, in the final analysis, it's your responsibility and yours alone, the twelve of you, to determine what the evidence in this case was, to draw your own inferences and conclusions from the evidence.[33]

"A prosecutor's misrepresentation of testimony may require reversal because of the inevitable prejudice to the defendant."[34]  "The relevant question is whether the prosecutor's comments 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'"[35]  Wesley has failed to make even a colorable case of prosecutorial misconduct.  The alleged misstatement, even to the extent that it may even be characterized as such, was not material and, in light of the evidence in the case and the trial court's instruction,[36] hardly infected the trial with such unfairness as to make Wesley's conviction a denial of due process.   The prosecutorial misconduct claim is so devoid of merit as to border on frivolity.  Thus, the failure

---

[32] Docket No. 28-8, pp. 98–100.

[33] Docket No. 28-10, pp. 121–22.

[34] *United States v. Drummond*, 481 F.2d 62, 64 (2d Cir. 1973).

[35] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), *quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Jenkins v. Artuz*, 294 F.3d 284, 294 (2d Cir. 2002).

[36] Although he contends that an objection by trial counsel would have required the court to either declare a mistrial or provide a curative instruction, Wesley does not argue that an instruction, other than the one given as part of the final charge to the jury, was required.

of trial counsel to object to the alleged misstatement and appellate counsel's failure to raise the issue on direct appeal hardly constituted ineffective assistance of counsel.

This Court cannot say that the assumed decision of the state court denying the motion for a writ of error *coram nobis* on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[37]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Wesley's case within the scope of *Andrade–Williams–Schriro*.  That is,  the state court decision must have been more than incorrect or erroneous; its application of clearly established law must have been objectively unreasonable.  Wesley has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.  Wesley is not entitled to relief under either his first or fourth grounds.[38]

Ground 2:  Insufficiency of the Evidence/Weight of the Evidence.

Wesley's position rests on a three-legged stool:  (1) the testimony of the eye-witnesses lacked credibility; (2) the failure to give an accomplice instruction allowed him to be convicted on the uncorroborated testimony of accomplices; and (3) his confession was erroneously admitted.  Distilled to its essence, Wesley's argument before this Court is that the uncorroborated testimony of several witnesses, alleged by Wesley to be accomplices, was so inconsistent and contradictory that, without independent corroboration, it was insufficient to support his conviction.  Wesley's position rests in part upon his claim that his confession, which he contends was involuntary and should have been suppressed, provided the only direct evidence that he was

---

[37] 28 U.S.C. § 2254(d).

[38] Although the fourth ground is unexhausted, the Court may nonetheless deny relief on the merits.  28 U.S. § 2254(b)(2).

the perpetrator.[39]  As discussed further below with respect to Wesley's third ground, there was no
constitutional error in admitting his confession.

The Appellate Division rejected Wesley's arguments, holding:

> With regard to defendant's myriad contentions, we need concern ourselves
> with but a few.  Initially, defendant contends that there was legally insufficient
> evidence to support his convictions due to the inadequate corroboration of
> accomplice testimony.  In that regard, we need note only that County Court did
> not charge the jury with regard to accomplice testimony, and defendant neither
> excepted to the charge as a whole nor requested a specific charge concerning
> corroboration of accomplice testimony.  Accordingly, the issue is not preserved
> for our review.  Moreover, even if we were to consider defendant's claim in the
> interest of justice, a review of the record makes plain that there is no evidence
> from which it could be concluded that the witnesses referred to participated in the
> shooting or could have been charged with any offense based on the conduct giving
> rise to the offenses charged against defendant (*compare People v. Adams,* 307
> A.D.2d 475, 477, 763 N.Y.S.2d 347 [2003], *lv. denied* 1 N.Y.3d 566, 775
> N.Y.S.2d 784, 807 N.E.2d 897 [2003]).  Finally, even assuming that there was a
> factual question as to whether the witnesses referred to were accomplices, it is
> clear that any error in that regard is harmless inasmuch as there is abundant
> evidence to corroborate the witnesses' testimony.[40]

Under New York law, the Appellate Division employs two related standards of

review—legal sufficiency and weight of the evidence.  Although related, each requires a discrete

analysis. Under the sufficiency of the evidence standard, the Appellate Division must determine

whether there is a valid line of reasoning and permissible inferences that could lead a rational

person to the conclusion reached by the jury on the basis of evidence at trial.  Under the weight

of the evidence standard, the court must examine the evidence further.  If based upon all the

credible evidence a different finding would not have been unreasonable, the Appellate Division

must, giving deference to the jury on credibility, weigh the relative probative force of the

conflicting testimony and the relative strength of conflicting inferences that may be drawn from

---

[39] Wesley does not attack the lack of evidence to support any particular element of the crimes of
which he was convicted.  Wesley's argument appears to be directed solely to his identification as the
perpetrator.

[40] *People v. Wesley*, 797 N.Y.S.2d 632, 633 (N.Y. App. Div.), *lv. denied*, 840 N.E.2d 146 (N.Y.
2005).

the testimony.[41]  In determining the weight of the evidence, the Appellate Division determines credibility issues; it must assess the evidence in light of the elements of the crime as charged to the jury.[42]  That is, the Appellate Division "must consider the elements of the crime, for even if the prosecution's witnesses are credible their testimony must prove the elements of the crime beyond a reasonable doubt."[43]

Under *Jackson v. Virginia*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[44] This court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Wesley's argument focuses on the inconsistencies and what he terms was the obviously unbelievable testimony of the eyewitnesses.  Wesley misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[45] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[46]  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law.  That such evidence exists is clearly established by the record in this case.  Wesley bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous—a burden Wesley has failed to carry.

---

[41] *People v. Bleakley*, 508 N.E.2d 672, 674–75 (N.Y. 1987).

[42] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[43] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[44] 443 U.S. 307, 319 (1979) (emphasis in the original).

[45] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[46] *Jackson*, 443 U.S. at 324 n.16.

To the extent that Wesley's arguments are founded on an asserted lack of evidence corroborating the testimony of his alleged accomplices, it is a question of state law beyond the purview of this Court in a federal habeas proceeding.  There is no federal constitutional rule requiring corroboration of accomplice testimony.[47]  Rather, "the federal rule is well established that a defendant may be convicted upon the uncorroborated testimony of an accomplice."[48]  In this case, Wesley's claim is based solely upon New York State law concerning accomplice status and the requirement of corroboration.  As there is no federal constitutional question presented on this question, it cannot be the basis for habeas relief.

Here, the Appellate Division, a state court, in rejecting similar arguments advanced before it, implicitly found that the weight of the evidence supported conviction of the crimes under state law.  Review of that decision is beyond the purview of this Court in a federal habeas proceeding.  The Appellate Division having at least inferentially determined that the evidence met the more stringent New York weight of the evidence test, it cannot be gainsaid that the evidence does not also meet the sufficiency of the evidence test under *Jackson*.  Wesley is not entitled to relief under his second ground.[49]

Ground 3:  Involuntary/Coerced Confession.

In his petition Wesley sets forth a single fact in support of his contention that his confession was involuntary:  that he did not sign the confession because it contained a sentence that he did not say.  The Appellate Division rejected Wesley's contention, holding:

Defendant's contention that his oral statement was involuntarily procured because of alleged police trickery also is unavailing.  Initially, we note that at the conclusion of a *Huntley* hearing, defendant conceded that the statements made by

---

[47] *Lisenba v. California*, 314 U.S. 219, 227 (1941) ("The Fourteenth Amendment does not forbid a state court to construe and apply its laws with respect to the evidence of an accomplice."); *see Caminetti v. United States*, 242 U.S. 470, 495 (1917).

[48] *United States v. Gordon*, 433 F.2d 313, 314 (2d Cir.1970); *see also Caminetti*, 242 U.S. at 495 ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them.").

[49] Respondent also contends Wesley has not exhausted his state court remedies as to this ground. The Court need not reach that issue as, the failure to exhaust state court remedies notwithstanding, it may deny the petition on the merits.  28 U.S.C. § 2254(b)(2).

him were voluntary and would be admissible at trial.  His only contention at that time was that the police had inaccurately or untruthfully set forth what he allegedly said.  Hence, defendant's present challenge as to the voluntariness of his statement is not before us.  Were we to reach this issue, we would note that deception by the police in obtaining a statement is not, standing alone, sufficient to render a confession inadmissible.[50]

At the end of the *Huntley* hearing,[51] the following colloquy took place between counsel for Wesley and the court.[52]

> Mr. Butler:  Well, Judge, I think it's admissible, I don't think there's going to be a question that it's admissible.  It's going to be a question of credibility that we can bring up later on at trial. There's no question that a statement was made. My client wasn't going to testify that he didn't make a statement. And he signed the waivers and he would have testified to that also today.

> It was what was in the statement that he disagrees with. So I guess that's not before the Court today.  The statement was presented to be voluntary and I don't think there's a question that it's coming in for that purpose.

> THE COURT:  All right.  Then under the circumstances, just to complete the record, I will indicate that I have determined on the credibility issue to be resolved in the favor of the officer.  I find that the facts to be as he testified they were with regard to the Miranda warnings and the questioning of the defendant.

> And there being no issue raised with regard to the admissibility of the statement, at this point in time then I will simply decree that the oral admissions and the partially written statement will be admissible at the trial.

In his traverse, Wesley raises a number of "factors" that he contends mandate suppression of his confession, including:  "continuous interrogation and threats by detectives in a hostile environment, police trickery and deception, lies and deceptive methods employed by the police, and failure to allow Petitioner [*sic*] speak with and [*sic*] attorney."  Wesley goes on to argue:[53]

> In the present case, Petitioner met with several detectives on October 18, 2000, in an interview room at the police station.  He was brought there by a patrol car

---

[50] *People v. Wesley*, 797 N.Y.S.2d 632, 633–34 (N.Y. App. Div.), *lv. denied*, 840 N.E.2d 146 (N.Y. 2005) (citation omitted).

[51] *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965) (a shorthand reference to the New York procedure for seeking suppression of a confession as being involuntary.

[52] Docket 28-2, pp. 61–62.

[53] Docket 31, p. 29.

MEMORANDUM DECISION
*Wesley v. Ercole*, 9:06-cv-01118-JKS                    14

involuntarily, and interrogated without a lawyer for several hours (A-513-A-514; A-519-A-520; A-522;A-524; A-531-A-534; A-535-A-537). The officers repeatedly accused Petitioner of lying, and being the shooter, refusing to stop the questioning until he (allegedly) said what they wanted to hear. Petitioner felt very threatened and did not feel that he was free to leave until he said what they wanted. Petitioner was tired, scared, felt threatened, and he refused to sign any statements other than one he himself could write down, which they refused to allow him to do (A-513; A-514; A-519; A-520; A520; A-522; A-524; A-531-A-533; A-534; A-535-A-537). The police also used deceptive methods and trickery by telling Petitioner that several people that were there identified him as one of the shooters, and by telling him he had blood on his shoes, which was a lie (A-513; A-519; A-520; A-522;A-524; A-531; A-532-A-537).

The references to the record do not support the arguments made.[54] While it is true that Wesley was brought to the station involuntarily and in handcuffs, according to his own testimony the initial interrogation lasted only two plus hours.[55] There is no testimony by Wesley that he was tired, scared, or felt threatened. Wesley did testify that the police officers accused of him lying; however, Wesley also testified not only that he lied to the police officers but also that he admitted to the police officers during the interrogation that he was lying. There is no testimony or other evidence from which it might be logically inferred that he felt he was not free to leave until he told them what they wanted. Such a statement is counterintuitive—if Wesley told them what they wanted to hear, *i.e.*, a confession to the crime, Wesley certainly was not going to be allowed to leave. The Court's review of Wesley's testimony at trial indicates that the primary thrust of the testimony elicited by Wesley's counsel at trial was not to establish that the confession was involuntary, rather it was to contradict the testimony of the interrogating detectives that he had, in fact, confessed.

The fatal flaws in Wesley's position before this Court are two-fold. First, the "evidence" Wesley contends establishes the involuntary nature of his confession was not introduced at the

---

[54] First, the Court notes that the references do not coincide with any designation in the record before it. Thus, the Court was required to mine the record to locate the places in the record where the supporting testimony was supposed to have been found. Second, the Court notes that the references are to Wesley's testimony at trial, not to any testimony given at the *Huntley* hearing. Docket Nos. 28-9, pp. 94–130, and 28-10, pp. 1–40.

[55] Docket 28-10, p. 8.

*Huntley* hearing.  The only evidence introduced at that hearing was the testimony of the interrogating officers.  Second, Wesley does not address in even the most cursory manner the question before this Court:  whether the decision of the Appellate Division correctly applied the law as established by the Supreme Court.  Here, the facts alleged by Wesley to establish the involuntariness of his confession were not introduced until after the People had rested their case-in-chief.  There is no indication in the record that Wesley objected to the testimony of the interrogating officers at trial concerning his confession on the grounds that it was involuntary.  Consequently, given that Wesley conceded the issue of the admissibility of the confession at the conclusion of the *Huntley* hearing, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[56]  Wesley is not entitled to relief under his third ground.

## V.  CONCLUSION AND ORDER

Wesley is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[57]  To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

---

[56] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70–73 (2003) (explaining this standard).

[57] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

MEMORANDUM DECISION
*Wesley v. Ercole*, 9:06-cv-01118-JKS                    16

The Clerk of the Court is to enter final judgment accordingly.

Dated:  August 19, 2009.

                                    /s/ James K. Singleton, Jr.
                              JAMES K. SINGLETON, JR.
                              United States District Judge